To begin, we will give each side approximately 10 minutes for uninterrupted oral argument. From that, Mr. Dvorak, you may save out some time for rebuttal. Before we proceed, and then after that, after the 10 minutes, the justices will, we will ask questions, and then you may save some time later for rebuttal. Mr. Walsh, you will have the same opportunity, 10 minutes of uninterrupted oral argument with questions to follow. But before we formally begin, would both of you identify yourselves for the record? Yes, for the appellant, attorney Richard Dvorak, D-V-O-R-A-K. For the appellee, Village of Maywood, Allen, A-L-L-E-N, Wall, W-A-L-L. All right, and you're representing the Village of Maywood today? That is correct, Your Honor. Yes, all right. All right, so let's begin. Mr. Dvorak, you may proceed. Thank you, Your Honors, and if it may please the court, counsel. This is a one-issue appeal, and that one issue is whether taken as true and in light most favorable to the plaintiffs, whether the complaint shows even a mere possibility of recovery by a sufficiently alleging willful and wanton conduct so as to state a claim under the Illinois Domestic Violence Act. This issue is reviewed de novo. Whether acts or omissions are considered willful and wanton are normally a question for a jury and are normally not even appropriate for summary judgment, much less as here decided as a matter of law on a motion to dismiss. There are four elements to plaintiff allege. He or she is a person in need under protection of the act. I believe that has been conceded, so I'm not going to further address it, at least not at this point. Number two, the statutory law enforcement duties owed to him or her were breached. Again, I believe that has been conceded, so I'm not going to address it, at least at this time. Number three, by the willful and wanton acts or omissions of law enforcement officers. That will be addressed in a moment. That's obviously the key issue on appeal. And then number four, that such conduct approximately caused plaintiffs injuries. Once again, I believe that has been conceded, and I will not address it, at least at this time. Going to the heart of the matter, the willful and wanton acts or omissions. First, addressing some basic legal issues. I know the defendants have framed this as whether or not the IDVA covers negligent acts. Clearly, they must be willful and wanton, and that's all we allege. It's a straw man argument to say that we are alleging negligence. We are not. The act is to be given liberal construction. The intent behind the act is to encourage, quote unquote, active intervention by law enforcement. This court in Fenton, for example, emphasized the IDVA covers actions and inactions, and they emphasized and inactions. And the appropriateness of dismissing a willful and wanton claim on a motion to dismiss, it's a very high burden to rule that as a matter of law. This court would have to conclude there is no other contrary conclusion that can be drawn from the record presented before it could say as a matter of law that the actions or inactions were not willful and wanton. So, briefly, on July 11, 2017, Gail Jackson, the brother of Andrew and the son of Lee Anthony, was arrested. He was released on an I-bond, then returned to the home the next day and engaged in an hours-long pattern of aggressive and violent behavior toward Andrew and Lee Anthony, which included the swinging of a crutch recklessly at Andrew. Andrew called 911. He reported he thought Gail was going to kill someone at the home, and as a result, police and ambulance arrived. Initially, the police asked in front of Gail whether or not anyone called the police, which is obviously contrary to any kind of domestic violence training, and Andrew was afraid to tell them at first that he was the one who called the police. But when he realized that he had no choice but to say that because otherwise Gail would not have been arrested, he did say, yes, we called the police and notified the officers that he was very dangerous, and the officers acknowledged the dangerousness of Gail. In response, the officers did none of the seven specified protections and duties under the IDVA, including arresting Gail, including offers of order of protection, other things as well, and they did not arrest Gail even though they had probable cause to do so, and Fenton says if they have probable cause to do so, either for a criminal act or for a violation of the IDVA itself, then you must and should arrest that individual, or at least a jury could find that they should have. In response, officers merely left Gail at the hospital and when not in custody, free to leave after that mental health evaluation, and when he returned, he returned to the home without any kind of protections whatsoever, no orders of protection, nothing, returned to the home, strangled Andrew to death, I'm sorry, strangled Andrew into unconsciousness, and then he was then charged with aggravated domestic battery and first-degree murder. In the court's ruling, the court basically only sided with the defendant on the one issue of willful and wantonness and ruled that when the officers removed the offender to place him in a place more equipped to deal with someone who may be dangerous, that took it out of the context or the rubric of willful and wantonness. However, this was not based on any sort of statutory language. There's nothing in the statute about taking someone to a local hospital. Even if there were, you should do and can and must do both. There is nothing inappropriate about having someone evaluated, then taking them and arresting them and processing them, that happens all the reasonable means, and taking someone to a hospital is not one of them. None of the seven things that were actually required of the officers were done, and the one thing that the court said was done is not in the statute. The court also said it took him to a place that's more appropriate to deal with a dangerous person. Last time I checked, I think police stations and jails were the place that we take people who are dangerous, not local hospitals who are not equipped with that. This was just an attempt to pawn off duties imposed on officers under the IDVA onto mental health professionals who are not equipped to do this and who are not required to do it under the law. The defendant in this case wants total immunity just based on the fact that they brought Gail to a local hospital and left him there. Again, not in the statute. There's no case law for support. Fenton seems to say the opposite. Fenton was removed from the home, or the abuser in Fenton was removed from home, and yet he was still found liable. The city was found liable. I think the city's position would require a total overturn of Fenton. They don't ask to do that. They also talk about two cases, Lacey and Wendling, but in both of those cases, those were duty cases. In Lacey, there was no duty to begin with, and here it's conceded there was a duty. In Wendling, also a duty case. The officers never were on notice of that the person was a domestic violence, someone protected under the IDVA, and therefore that's why that complaint did not state a claim. It had nothing to do with willful and wantonness, and neither did Lacey. With that, I'd be happy to take any questions. All right. Justice Copps, do you have questions for Mr. Dvorak? Just a couple. Thank you, Mr. Dvorak. Appreciate your argument this morning. Was there any discovery conducted in this case at all? No, Your Honor. Did not get the chance to do that. Was discovery requested? It was at a motion to dismiss, and it was based on the allegations in the complaint itself, so that was not asked because it was based on the sufficiency of the complaint. Understood. And then did I earlier hear you say, and you might have just, maybe I misunderstood you, did I hear you say after a mental health evaluation at the hospital, which would suggest that there was some knowledge that there was at least an eval? We don't know if there was a mental health evaluation. I mean, again, we don't have in the case. That's the ostensible purpose why they would have brought him to the hospital, but we don't even know that because we were never allowed discovery. Who knows what the officers did or didn't do? All we know is that he was released, and he was never placed in custody. And is it clear in the complaint, and I did look at the complaint, is it clear in the complaint that at least one of the officers indicated some knowledge that the defendant was dangerous or violent? Yes. That was specifically alleged in the complaint that not only was he notified of the dangerous by Lee Anthony and Andrew, I actually believe, yeah, I believe it was both, but either one of them, but he then acknowledged, yes, we know he's dangerous. Remember, he had just been arrested and released the day before, so I don't know if it's based on this event or the prior event or other events, but certainly they knew he was dangerous. Thank you. I have nothing else, Justice McBride. Justice Ellis. Just a couple. Good morning, Mr. Dvorak. Good morning. So in your ideal of what should have happened here, as I understand your brief and your argument, you're not necessarily criticizing the fact that they took him to a hospital first. No, that's fine. That's appropriate. And that was for a mental health eval, although you don't know whether that happened or not. Correct. And it's ostensibly for a mental health evaluation. It was not specifically told to them, but yes. Yeah. I mean, I can't imagine what else they were taking him to the hospital for. There's no allegation that he was injured or anything. Exactly. Okay. So what should have been done? What was the proper thing to do? Well, I think that should, thank you, Justice. They should have complied with the statute. So one thing is they could have certainly taken him to the hospital, had him evaluated. And then after that's done, then taken him back to the station and charge him with domestic battery or whatever charges were appropriate. I'm sorry, not domestic battery, domestic assault or any other charges that were appropriate. Just like any other person who may have a mental health issue, who also commits criminal acts. That's so common. Okay. Is there anything else that could have happened in that situation? Because I'm not an once we get to the hospital. So there's a mental eval, let's say. If the physicians, the treaters at the hospitals come to the conclusion that this person is in need of mental health treatment of some kind, is there some mechanism, like what happens in this situation or what could happen beyond them just saying, okay, doctors, thank you for that information. Now we're going to arrest them because they could have done that all along. Sure. And I know this mainly from my experience with the Taylor case and other pending. Right. Well, that's why I ask. I assume you maybe have some knowledge. Sure. So yes, there is civil commitment proceedings that can happen. So in a civil commitment proceeding, an officer, for example, is one of the individuals who can request a civil commitment proceeding. Okay. And that person would then be, you would also need a doctor to sign off on it. And that person could potentially be civilly committed. Again, it's not mutually exclusive though. You can be civilly committed and that would, that's certainly some one event that could result in some sort of temporary custody. I mean, that's a, that's a pretty major step though, right? Like civilly committed. I mean, the police come to, I'm just trying to look at this from a practical standpoint, the police come to the house, they confront a situation where there's allegations that this was a crime. They take him to the hospital. And I, I'm just not really sure what the function of the hospital was, was what the, what role the hospital is really playing here. Because I would short of taking him into custody for an arrest, which you're right. They could have done before or after. I'm not sure what the, what the stop at the hospital is doing for him. I agree. I'm not sure what it does for him either, except I'm assuming that they're going to have to deal with a mentally ill person in custody. They want to see what they're dealing with, you know. But again, that does not do anything to relieve the officers of the, their duty to protect. What we can't lose sight of is that this is not about how to deal with Gail. It's about how to Those were never offered. None of the seven steps that are required were offered. So that also could have been done and should have been done to protect these individuals. But, but if they had done a number of these things that are listed in the statute, I think it's one through seven, you talk about them in your brief, every, everybody talks about. You know, they could give, they could say, here, here's how you go get an OP. Here's how you get a judge. Here are some legal services you could utilize. But none of that stops the guy from coming back to the house and committing murder. Well, that's certainly, there are a number of things that can and should be done. And for example, in Fenton, the person was temporarily removed and he came back. Of course, you know, there's ultimately, individuals can eventually be released from custody. Ultimately, eventually, individuals can ignore orders of protection. But if we're to throw our hands and say, none of these are ultimately going to be the absolute prevention of death, well, then there'd be no purpose for the IDVA. And certainly that's why we have the issue of proximate cause. That's why the defendants can make all these arguments to a jury. Okay. But it would, it would make the IDVA a nullity if we just said, well, he probably would have killed him anyway. You know, that, that would completely eviscerate the IDVA. Justice McBride, can I come back for a moment? And it just, and justice on the issue of what happened at the hospital. So, as I understand the complaint, they, the, the officers took the defendant to the hospital, but there's some, something about it, the way the complaint is, is drafted that leads me to believe they simply took him, did not remain to even know whether an eval was conducted or what the results of an eval, if conducted, were such that it might inform a next decision to perhaps arrest. Your, your honor, I think that's a reasonable inference from the complaint. I mean, obviously we're here at an issue where we would have to need to get the medical records of someone who is not my client. So what exactly was the interaction between the health professionals and this individual? You know, that's something that hopefully we can address in discovery, but certainly all we know is that they were dropped off at the hospital and then, and then they left. I don't even know if the officers did stay around for mental health violation. I don't know what they told the officers, but all we know is that dropping them off at the hospital was not fulfilling the duties under the IDVA. Thank you. Justice Ellis, do you have more? No, I think I'm fine. Thank you. So, so following up on Justice Kapp's inquiry, why, in your original complaint, you said something about ostensibly for a mental health evaluation, but in your amended complaint, you say they just dropped him off at a hospital. Why, why would you even suggest that he was there for a mental health evaluation? Is that they just dropped him off and that was it. There's nothing else, nothing that we can assume, but they just took him to a hospital and then some hours later, he returned. Hospitals don't usually hold people, do they, if they don't want to be there? Exactly. That is not the appropriate place to, to, for people. Maybe I, maybe that's even being too generous to the defendants. I mean, I can't, like, like Justice Ellis indicated, I can't imagine why they would have brought him there other than, than for a mental health evaluation, but that also does not answer the question that Justice Robbs. But you really, you haven't pled any facts except to say ostensibly, and that was in your original complaint. Correct. Let's talk about one of the complaints that opposing counsel has, I think, and argued that many of your allegations are conclusory. So for example, this hours long pattern of harassment, is that a fact or is that a Your Honor, I think those are generalizations of what's happening in the home. I mean, I could have gone into great detail about what's happening in the home. But ultimately, the key facts are that he swung a crutch at him in a reckless manner, which would have constituted an assault. What's with, why did you say recklessly? What's that based on? Because if you, if you swing someone, swing at someone with a crutch, I think that's either intentionally or recklessly, but at a minimum, it's recklessly. Okay. All right. Now I understand. I understand. You also, you do argue that there were multiple offenses here, reckless conduct, disorderly conduct, aggravated or assault rather, and then, and then the catch all of a violation of the act. So you do argue that there was a basis for an arrest, correct? Or probable cause. Absolutely probable cause. All right. But you do also recognize that the statute in terms of making an arrest is if appropriate, right? It's not mandatory. Correct. And the statute says if appropriate. And for example, in Fenton, they indicated a jury could rationally conclude it was appropriate to arrest the person. So I think the defendants at a jury trial could make that argument. They could say, we didn't think it was appropriate for whatever reasons, but to dismiss it at the motion dismiss stage, I think is highly inappropriate. Did you ask the judge or did she just do a spontane decide? I'm not going to let you replete. Normally I would, but in this case, I won't. I'm not. I actually did ask her orally after the. Yeah. Is it in the transcript? I can't recall. It's at the very end of the transcript. Yes. All right. And she denied that request. She denied that request. Okay. And another thing, some of these questions generally are things for a jury, aren't they? Whether someone acts in good faith, whether the conduct was willful and wanton. You would agree with that, of course. Of course. Yes. What's the case that you say that a court cannot or should not grant summary judgment after, say, discovery and pleadings? You're saying that willful and wanton shouldn't even be decided on a summary judgment motion. What case is that? Your Honor, I believe it's in my brief. I mean, obviously there are some instances where that's appropriate, but very few. And I do believe that at least some of the cases in my brief were summary judgment cases, or at least that's mentioned, but I could be wrong. You also allege that the police officers who responded did not do any of the other requirements apart from making an arrest where appropriate. You allege that none of those things were done. And that is pled as a fact, would you say? Yes, that is specifically pled, correct. Is there any information about this day before battery? Are the police sort of presumed to know that he was charged with a battery and out on an eye bond? Was that something? Do you know whether the Andrew Davis told the police? Again, I think the fact that he was in police custody the day before and that Andrew said he is dangerous and they indicated we know he's dangerous. I think a reasonable inference would be that they did know specifically that he was arrested the day before. Do you know what was on the 911 call? Do you have that? I do not have that. There's only so much that FOIA will give you. But you do know it was a call that actually resulted in an immediate response of not only to the scene but an ambulance, is that right? Absolutely, yes. Okay. Do either of the other justices have any further questions at this point for Mr. Dvorak? No. No. Thank you, Justices. Thank you, Justices. And we'll give you a couple minutes for rebuttal. And now, Mr. Wall, you may proceed. Thank you, Your Honor. And good morning in Mayotte Police Court. Again, my name is Alan Wall and I represent the village of Maywood in this matter. The plaintiff appeals from a decision by the Circuit Court of Cook County that dismissed the first amended complaint with prejudice. The Circuit Court granted the village's motion to dismiss the first amended complaint with prejudice, ruling that the plaintiff failed to plead sufficiently that unidentified Maywood police officers' actions in response to a situation of domestic violence constituted willful and wanton conduct. Your Honor, specifically, the trial judge stated that, and I quote, the plaintiffs have cited all the portions of the Illinois Domestic Violence Act but failed to cite any specific facts to show that the officers' actions in removing the offender to a place more equipped to deal with someone who may be dangerous was the type of action or inaction that would shock the consciousness or is in utter disregard for the well-being of the victim. That's the end of the quote. The plaintiffs argue the trial court erred when it dismissed the first amendment complaint with prejudice without allowing an opportunity to replead. The plaintiffs are wrong and I submit the Circuit Court's ruling should be affirmed. Your Honors, Illinois is a fact pleading state and the basic pleading rules dictate that the Circuit Court's decision was correct. Since Illinois is a fact pleading state, a plaintiff must allege sufficient facts to bring a claim within the scope of the cause of action asserted and all well-pled facts are taken as true with all reasonable inferences from those facts drawn in the plaintiff's favor. But a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. This fundamental pleading rule when applied to willful and wanton conduct claims means the mere characterization of acts as willful and wanton conduct is insufficient to withstand the motion to dismiss. Your Honors, the plaintiff's amended complaint alleges the conduct of unidentified Maywood police officers when they arrived at the plaintiff's residence in the early morning hours on July 13, 2027, constituted willful and wanton conduct. The complaint alleges the officers upon arrival at the residence questioned the plaintiffs and Gail Jackson, the perpetrator, together enforced one of the plaintiffs, Mr. Andrew Davis, to tell them in the presence of Gail that he called 911 and reported he thought Gail might kill someone. This allegation shows the officers upon arrival at the scene investigated to determine the nature of the situation. The complaint alleges that one of the officers acknowledged Gail was dangerous. The complaint also alleges that the officers knew both Andrew Davis and the decedent Lee Anthony Davis were domestic violence victims needing protection. And the complaint alleges the officers failed to take any of the seven actions that are set forth by Section 304, subsections one through seven of the Domestic Violence Act. In particular, the plaintiff's on the officers not arresting Gail. But the complaint also alleges the officers transported Gail away from the residence and from Andrew and Lee Anthony Davis by transporting him to a hospital. In other words, the complaint alleges the officers did not ignore the situation or leave without taking immediate action to prevent further abuse. With regard to willful and wanton conduct by the unidentified officers, the complaint repeats the same allegation three times. And that is the actions taken or failed to be taken by one or more Maywood police officers referred to in this complaint violated the act and that these officers willfully and wantonly failed to do their duty to prevent a crime against a person protected by the act through their actions or inactions as required by the act and specified in this complaint. I would submit that this pleading epitomizes allegations that merely characterize acts as misconduct and are insufficient to withstand a motion to dismiss. Your honors, the circuit court found the officer's action in removing Gail from the residence and taking him to a hospital. Again, according to the circuit court, a place more equipped to deal with someone who may be dangerous was conduct that would not shock the consciousness or that showed an utter disregard for the well-being of Andrew or Lee Anthony Davis. Nothing in the first amended complaint allegations asserts facts suggesting the officer's actions in taking Gail to the hospital could be consciousness shocking or display utter disregard for the safety of the domestic violence victims. The allegations do not indicate the officers had a degree of knowledge regarding the security of the hospital or the policies regarding release of persons brought to the facility by the police that might have alerted the officers that bringing Gail to the hospital rather than arresting him would place Andrew and Lee Anthony Davis at risk of further abuse. The essence of the plaintiff's argument is that the unidentified Maywood officers failed to take any of the seven actions prescribed, excuse me, prescribed by section 304 and therefore they must have engaged in willful and wanton action or inaction. But section 304 imposes on the officers a duty to a domestic violence victim to, quote, immediately use all that all reasonable means requires officers to take only the seven courses of action set forth in the DVA. And section 305 provides immunity from liability to officers who engage in good faith efforts to assist domestic violence victims. The first amended complaint fails to allege facts that indicate the unidentified Maywood officers did not act in good faith. Your honors, Illinois case law addressing motions to dismiss domestic violence at complaints provide this court with additional reasons to affirm the dismissal of the first amended complaint. These cases, for instance, Callaway v. Kinkelar, Snead v. Howell, Moore v. Green, and Bair v. City of Joliet all address the issue of whether a plaintiff sufficiently alleged a willful and wanton conduct claim to withstand a motion to dismiss. These cases all have one important allegation in common. The plaintiffs in these cases all allege that law enforcement officers knew or reasonably should have known the plaintiff was a domestic violence victim. And despite this awareness, the officers in each instance did nothing to assist the victim. In each instance, the allegation that the officers failed to do anything to help the victim, despite knowing the danger involved, meant the complaint sufficiently set forth a willful and wanton conduct claim to survive a motion to dismiss. But that is not the case here. The first amended complaint expressly alleges that the Maywood officers did take action to assist the plaintiffs. They took Gail out of and away from the residence and transported him to a hospital. The plaintiffs may disagree with the circuit court as to the efficacy of the officer's action, but this disagreement cannot be the basis for reversing the ruling, dismissing the first amended complaint with prejudice. Thank you, Your Honors. Justice Cox, questions for Mr. Wall. Yeah, just quickly, thank you, Mr. Wall, for your argument. Appreciate it. So just thinking in terms of the definition or part of the definition for willful and wanton, and I am really focused on utter indifference. And so what was actually pled in the complaint, even before we get to the taking to the hospital, is at least one or both of the officers expressed knowledge that the defendant was dangerous. We don't know whether that's based on the prior battery or some other information that they may have had. The questioning, the manner in which the complainant and the defendant were questioned in the same room, and then the complaint does allege that there had been a continuing rampage, although not all that specific about what the rampage was. And then the swinging of the object at the front. Are all of those things, in your view, sufficient to state a cause of action or to support a claim of utter indifference? No, Your Honor, they're not. And I would point to the fact that assuming the officers were aware of the very information that you just alluded to, had they, knowing all of that, then turned on their heel and simply left, I think you would have a situation of utter disregard for the safety of Andrew and Lee Anthony Davis. But that's not what the officers did. They questioned, they investigated to collect information, and then they took the action of removing Gail from the residence. They did not just leave him one block away from the residence in zero degree weather, as was the case in Fenton. Instead, they got him in the car and they took him away from the scene and transported him to a hospital. It is a very different response that the officers took based on their questioning of Andrew and Lee Anthony than what you find in some of these other cases where you have clearly alleged in the complaint that officers knew that they were dealing with a domestic violence situation and they did nothing. That's not what happened here. So your position is that we have to get to doing nothing in order to sufficiently plead willful and wanton? No, nothing. I would not say that. I am saying, Your Honor, that the other cases that have dealt with the issue of willful and wanton conduct and a motion to dismiss, in each of the cases to which I referred the court, it is a fact that in those instances, law enforcement knew or should have known that they had a domestic violence situation. And in those instances, they did do nothing. And that's the guidance that we have from precedent. I would say in Fenton, Your Honor, where you have the police officers who did nothing more than take the abuser out of the house, they find out that, oh, my girlfriend will come pick me up. It may take an hour. And at that point, the officers simply drove off, knowing that the abuser was just steps away from the residence where abuse had occurred. That would seem to me to be an instance where you have some police action that was taken, but it was so clearly ineffectual. And the officer should have known it would be ineffectual, such that willful and wanton conduct would seem, or it would be the officer's actions did show utter disregard such that willful and wanton conduct could be attributed. So it's the fact for you that then taking the defendant to the hospital should end the inquiry. They took him. They took him. And not only that, Your Honor, but there is nothing in the complaint that has been alleged that would allow for an inference that the officers in taking him to the completely ineffective. We have nothing in the allegations that reflect what the officers view or what their intent would have been that would go to the issue of their actions being willful and wanton in nature. I have nothing else, Justice McBride. Thank you. Thank you, Mr. Wall. Thank you, Your Honor. Justice Ellis. Thank you. Just briefly. Good morning, Mr. Wall. Thank you very much. Good morning, Justice. Glad to see you. Good to see you, too. It seems to me there's a lot of different things that could have happened at the hospital, and we don't know what happened at the hospital. And as we play with those facts, we could make the police officers look better or worse. We could say, for example, somebody, maybe they, for example, maybe they just dumped him in emergency room and left and just thought, at least we'll give him some time to cool off. But he'll probably walk out of the ER on his own. But at least it'll be some cooling off time, and that's good enough. We might have a situation where the doctor said to the officers, this guy has some mental problems. It sounds like he's now gotten in trouble with the law for two days in a row. He seems violent, agitated. And the police said, well, not my problem and left. And we could do this all day and tell these stories and make the police look better or worse, but we don't know what happened. So, you know, when we're reading this liberally in favor of the plaintiff, and when the plaintiff is pleading something that not only that he can't know yet, I mean, he really has almost no chance without subpoena power to know what happened at hospital to another person who's not his client. Does that factor in at all? Because it's, you know, the defense that you're doing your job and you're saying he didn't say what happened. He didn't say this, didn't say that. But could he have? Is there anything more he could have pleaded at this point? Well, let me address that in the following manner. We are addressing the issue of willful and wanton conduct and whether the complaint has sufficiently alleged facts that would bring the willful and wanton conduct claim within the scope of this cause of action. And so our focus for willful and wanton conduct is on the officers and what they knew and what their intent happened to be because we are focusing, I believe, Your Honor, on the second of the two types of willful and wanton conduct. I don't think anybody in this case is suggesting that the officers engaged in intentional actions that were designed to cause harm to the decedent or to Andrew Davis. But the inquiry properly is when the officers transported, first they removed Gail from the home and they transported him to the hospital, what did they know such that an inference could be reasonably made that they should have known that this course of action was inappropriate. It would absolutely be ineffective and it would do domestic abuse. We don't have anything in the complaint that addresses what the officers knew when they made the decision to take this individual. I apologize for interrupting. I take you your point. You're right. We don't. I'm not sure how a plaintiff can plead that. I mean, they say they have an admission which gives some insight into what they knew that one of the cops said, yeah, we know he's dangerous. They're lucky they have that if that turns out to be true. Usually you have less than that because you don't know until you take discovery. But don't we ask when we're presented with a motion to dismiss at the circuit court and when we're reviewing it de novo on appeal, isn't the question, are there any set of facts that could entitle the plaintiff to judgment? And aren't there sets of facts here that would show willful and wanton conduct within the scope of what has been pleaded? I don't think so, your honor. If the focus again, as it properly should be, is on what the officers knew at the time they made the decision that they did. I suppose, your honor, the plaintiff could have pled perhaps on information and belief that the hospital in question had certain policies that the officers certainly should have been aware of, but the complaint doesn't do that. And so I think what we're left with would be an exercise in speculation and conclusions of fact, neither of which are to be credited given the Illinois fact pleading standard. Okay, thank you. Thank you, your honor. So I have a couple of questions for you, Mr. Watt. You would agree, wouldn't you, that willful and wanton conduct can be the result of either actions? Yes. Okay, great. And would you also agree that the way the complaint stands, there's an allegation of a call to 911 and an ambulance and officers arrive? Agreed. Okay. And then apparently, there's this discussion and I think it was Andrew who had I'm afraid he's going to kill somebody. And one of the officers are both acknowledge he's they know he's dangerous. That's in the facts, right? That is but your honor, I would also note that the call was the 911 call. I'm afraid he may kill someone. And that was, if you will, the trigger for the police and an ambulance to immediately respond to the residents. Okay. All right. Then we have the following allegations. I think that the plaintiffs are arguing that instead of taking the gale to the hospital, they should have arrested him. That's an allegation. Wouldn't you agree? Yes, I would. All right. And then they allege that there were seven breaches of the Illinois Domestic Violence Act, beginning with what I just said, should have arrested him. That's a fact. Okay, that's what they're they're basing everything on that. Then they allege that there were multiple breaches of the statute, isn't the mandatory? You're not not an arrest, where appropriate. But there are a number of statutory requirements that they alleged were breached. And they listen. Those are breaches and basically amount to inaction. But they're in that complaint. Is there a point? Okay. And wait, let's add this. The way the complaint stands, we're supposed to be drawing like the circuit court any reasonable inferences therefrom. Okay, so we haven't, we have another breach where they first approach them all together and say, what's going on here? What happened? They're not supposed to do that. In a domestic violence situation. They're supposed to talk to the going on amongst parties. That's in the complaint. Then they allege the officers after not doing any of these things, one of which would advise them how to get an order of protection or remove them so that they could be in a safe haven. But an order of protection could also result in a 72 hour, you know, stay away order. Okay, but then we go to the hospital, the officers right now, it's alleged all they did was drop them off. Don't we infer from that, that that's all they did. They dropped them off. Or we could reasonably infer that they just left them there to his own devices. Is that a reasonable inference? I mean, sure, we can make other inferences. But aren't we supposed to draw all reasonable inferences in favor of the complainant? Your Honor, I would say, first of all, with regard to the last inference, sure, they simply dropped him off and basically said, Goodbye, he's no longer our problem. I don't think there is anything in the allegations that would support that as a reasonable inference. I believe that that would be a speculative and speculative conclusion that is not supported by specific facts that have been put. All right. But is it is it speculation that if you drop somebody off the hospital, whether they're for the emergency room or whatever else that that person has the right to leave whenever they want? Is that is that kind of basic or not? Well, is that an inference we shouldn't draw? All right. I think that forget that one. But basically, after there's an allegation of multiple statutory breaches and protocol breaches regarding a call of domestic violence, are you telling us that that you can't reasonably infer that that might amount to aggravated negligence? Under the willful, the second prong of willful wrongdoing conduct? Well, Your Honor, I first of all, note that we're here because there's a contest as to the circuit court's conclusion that the officer's actions in taking Gail to the hospital, the circuit court characterized those as being actions that removed the abuser to a situation that was better equipped to handle a dangerous. Let me ask you specifically about that, Mr. Find that that the hospital was more equipped to deal with a dangerous person. How can she make that leap on a motion to dismiss? There's no testimony. There were no allegations that the hospital was better equipped to do any of this. Is the circuit court supposed to decide intent when reviewing a motion to dismiss? Didn't she decide that the officer's take him to a place that was more equipped to deal with someone like the offender here? I mean, where does that come from? Does the court get to do that on a motion to dismiss? Your Honor, if I may, as I read section 304, there is expressed a fundamental duty that law enforcement officers have once they are aware that they're dealing with a domestic violent situation, and that is to take all reasonable means to prevent further abuse. So that's the basic duty. You have to take action that the officers believe will prevent further domestic violence abuse. Yes, you then have your seven specific actions that are set forth. There's nothing in 304 that restricts the way officers fulfill their fundamental duty to prevent further domestic violence abuse. That would, I think, nullify law enforcement discretion based on the particular circumstances that they confront. Aren't these all questions of fact, though? And please, just answer back to the allegations. Couldn't one reasonably infer that because of multiple breaches that are required, they allege that those breaches occurred? And they allege the previous breach where they put them all together and started interviewing them. And then they allege that they took him to a hospital, and hours later, he returned. So I'm saying to you, are you saying that as a matter of law, that the trial judge could conclude that they acted reasonably, that everything they did was in good faith, and therefore their duty ends as a matter of law based on this complaint? I am. Yes, Your Honor. And I would say further that I believe based on the allegations in the complaint, and making all reasonable inferences in favor of the plaintiff, based on the face of the complaint, the circuit court judge was entirely within her province to conclude that the officer's actions in removing Gail from the residence and taking him to a hospital would not shock the consciousness or show an utter disregard for... And you're saying that multiple violations of a statute imposing a duty on police officers could not, it could not be inferred there was an utter indifference? Your Honor, in this instance, that isn't all that the complaint alleges. The complaint also alleges that the officers did take affirmative steps to remove the abuser such that they were preventing further domestic abuse. And I emphasize that again, Your Honor, because there is nothing in Section 304 that dictates that the fundamental duty that the officers have can't be accomplished by actions other than the seven that are enumerated. All right. Well, I guess I understand. I guess what I think you're trying to say is that multiple breaches of statutory duties, which I think actually could be found in the cases, can amount to willful and wanton conduct. Last question, should the judge be deciding actions such as the reasonableness or the good faith or whether this complaint in its entirety is devoid of willful and wanton conduct? Aren't those generally questions for a jury, a fact finder? Your Honor, the case law indicates that they are, but the case law also indicates that a circuit court judge facing a 2615 motion to dismiss, if the circuit court judge finds deficiencies in the pleadings to be of such a that the judge can, as a matter of law, make a ruling that the complaint is insufficient to make out a willful and wanton conduct cause of action. All right. Any further questions for Mr. Wall? All right. Thank you. We're going to give you just a brief rebuttal. Yes, Your Honor, very briefly. So with regard to whether or not an officer could do more things than the seven listed, yes, they could, but that doesn't relieve them of the duty of doing the seven. And really what we're talking about here is something that's done, it's not even in the statute. And I think regarding sort of something that Justice Cobbs said, I do think the defendants are proposing a do nothing standard. They're taking the facts of most of these cases where the officer did nothing and said, well, because the officers did something, they took them to the hospital, therefore willful and wanton can't be met. That flies in the face of Fenton, first of all, because Fenton was more than just do nothing. They actually didn't even want him arrested in Fenton and they came back and did take him out of the home. But either way, most important thing is the statute. The statute absolutely is not a do nothing standard. It's far from it. It is a do everything statute. So rather than impose a do nothing standard, I think this court should follow the statutory language in this case and require the officers to do everything reasonable under their power. And the complaint more than satisfies that standard. So I thank you all, unless there's any more questions. Does anyone, Justice Ellis, Justice Cobbs, any more questions? No, thank you. Thank you. All right. Thank you both for the arguments today. And we will take this matter under advisement. Thank you. Thank you, brothers. Have a nice day. Thank you. Thank you.